INHABITANTS OF DARTMOUTH *vs.* INHABITANTS OF LAKEVILLE.

The admission of an overseer of the poor, in giving directions 'for a pauper's relief to one who has the care of the town's poor, that the pauper has a settlement in the town, derived from an ancestor, is not competent evidence against the town in an action subsequently brought against it by another town for another cause, in which the settlement of another pauper, which depends upon the settlement of that ancestor, is in controversy.

CONTRACT to recover for moneys expended in the support of Sarah Niles as a pauper. The answer, amongst other things, denied her settlement in Lakeville.

At the trial in the superior court, before *Ames*, J., it appeared that Lakeville was formerly a part of Middleborough, and was set off and incorporated as a separate town by *St.* 1853, *c.* 338. Sarah Niles was the widow of Henry Niles, who was the son of Samuel Niles. There was evidence tending to show a former residence of Samuel Niles within the present limits of Lakeville, and no evidence that he ever resided anywhere else. For the purpose of proving that Samuel had a settlement in Middleborough, while so residing there, the plaintiffs proved, under objection, that in 1826 Joseph Clark had the care of the poor of the town, and Wilkes Wood, one of the overseers of the poor for that year, informed Clark that he must take charge of Lydia Niles as a pauper, because she was a daughter of Henry Niles, and granddaughter of Samuel Niles, and her father had never gained a settlement in his own right anywhere else, and therefore she was entitled to claim under her grandfather's settlement; and that Clark accordingly did take charge of her. The defendants also objected that there was no evidence of the legitimacy of Henry Niles; but the judge ruled that the conduct of the town and the relief furnished to Lydia were to be

considered as an admission, not conclusive, but open to explana-
tion, of the settlement of Samuel Niles, and of the legitimate
descent of Henry.

The jury returned a verdict for the plaintiffs, and the defend-
ants alleged exceptions.

*E. L. Barney*, for the defendants.

*T. M. Stetson*, for the plaintiffs.

METCALF, J.   The sole ground of the argument for the plain-
tiffs is, that overseers of the poor are agents of the town, whose
admissions concerning the settlement of paupers are evidence
against the town, and that such admissions by a single over-
seer are such evidence.   Assuming, without expressing an opin-
ion, that such is the law, yet we are of opinion that the state-
ment made by Mr. Wood, which was admitted in evidence, was
not admissible.   No case has been cited, and we know of none,
which warrants its admission.   And it is our opinion that evi-
dence of agents' admissions and declarations should be kept
within the strictest limits to which the cases confine it.   *Garth*
v. *Howard*, 1 Moore & Scott, 632, and 8 Bing. 453.

It appears that Lydia Niles in 1826 fell into distress in Mid-
dleborough, and needed immediate relief.   It was therefore the
duty of the overseers of the poor to provide for her comfort and
relief, whether she had or had not a settlement there or in any
other town in the state; *St.* 1793, *c.* 59, §§ 9, 13 ; and we are
not disposed to deny that a single overseer might legally order
such relief to be given to her.   See 13 Met. 197.

The *res gesta*, of which Mr. Wood's statement is supposed
to have been a part, was his direction to Clark, who had the
care of the poor, to take charge of Lydia Niles as a pauper.
By giving this direction, Mr. Wood admitted that she was a
pauper who needed relief.   And this admission, we doubt not,
was sufficient to bind the town to pay Clark for her support,
and would have been evidence in his favor in a suit against the
town to recover for that support.   For by stating that she was
a pauper in need of relief, and directing Clark to take charge of
her as such, he made a valid implied agreement with him, in
behalf of the town, that the town would pay him.   But the

court are of opinion, upon the reason of the thing as well as upon the authorities, that the declarations or admissions of an agent, at the time when he makes an agreement, are admissible in evidence against his principal only when those declarations or admissions are such as might have induced the other party to enter into the agreement, or might in some manner have affected or modified the agreement. See 10 Ves. 127; 2 Stark. Ev. (4th Amer. ed.) 43. " It is not true," says Chief Justice Dallas, Gow R. 48, " that where an agency is established, the declarations of the agent are admitted in evidence merely because they are his declarations; they are only evidence when they form part of the contract entered into by the agent in behalf of the principal." In the present case, Mr. Wood's narrative respecting the pedigree of Lydia Niles, and the legal settlement of her ancestors, could not have formed any part of Clark's inducement to take charge of her at the expense of the town; nor could it in any manner have affected or modified the agreement implied by law, which was made with him by Mr. Wood as agent of the town. And if he had brought an action against the town to recover for supporting the pauper, he could not have introduced Mr. Wood's narrative in evidence. It must have been excluded as immaterial, if for no other reason. A *fortiori,* it is not admissible against the town in a suit by a third party, for a different cause of action, thirty-six years afterwards. The exception to the admission of this narrative in evidence must be sustained.

Whether the admissions of an agent when making an agreement for his principal are admissible in evidence against the principal in any case except in an action against him on that agreement, or relating to it, is a question which it is not necessary to decide in this case.

We must also sustain the exception taken to the ruling that the conduct of the town of Middleborough and the relief to Lydia Niles were to be considered as an admission of the settlement of Samuel Niles and the legitimate descent of Henry Niles. This ruling might not have been exceptionable if none but legal evidence had been given of Samuel Niles's settlement, and of

Henry's and Lydia's descent from him, and deriving their settlement from him. Evidence that Henry Niles was the son of Samuel must have been regarded as evidence that he was a legitimate son, unless the contrary were shown. But as those matters were not proved by legitimate evidence, the ruling cannot be upheld. *Exceptions sustained.*